*127
 
 Battle, J.
 

 We have carefully examined the testimony in this case, and it entirely satisfies us, that George Hay, Senr., though, from his advanced age .and other opuses, a man of weak mind, had, at the time when he executed the deed, which has given rise to this contest, sufficient mental capacity for that purpose. Indeed the contrary is rather insinuated, than asserted in the
 
 bill,
 
 and the main ground, upon which the plaintiffs rely, is-, that the deed was obtained by means of undue influence, fraudulently exercised by George Hay, Jr., and his, wife,' over the grantor. The specific charge is, that it was obtained *‘by threats to institute vexatious suits against him and by divers other artifices, false suggestions and undue influence.” It is well settled, that neither weakness of mind nor old age is, in the absence of .fraud, a sufficient ground to invalidate an instrument.
 
 Smith
 
 v. Beatty, 2 Ire. Eq. 456. And, although it is said in the same case, “that excessive old age, with weaknets of mind, may be a ground for setting aside a conveyance obtained under such circumstances,” yet, it is manifest, t'at, to have that effect, there must be some fraud in the tran. «fiction, espressly proved or inferred from the circumstances. It is incumbent, then, upon the plaintiffs to prove their charge, that the deed was procured from the* gr inter by the fraudulent exercise of undue influence over him by the grantee and his wife. Have they done so ? Wo think that they have not. There is no testimony at al,. that George llay, junior, or his wife, at or about the time when the deed was executed, threatened the grantor with Suits of any kind, or used any artifice, or made any false suggestions, to procure its execution. Two of the plaintiffs’ witnesses, to-wit, David Miller and Isaac D. McClure, testily to declarations of the grantee, tend ng to show the exercise of undue influence by him over his father at other times. The witness, Miller, states, that George Hay, jyinior,- .told. him- that he could
 
 *128
 
 make histfather do any thing he wished, in relation to the disposal of his property, and he would have it done ; but the witness does not mention on what occasion or at what time this was said. Isaac D. McLure 1 estilles, that he wrote a will for the grantor in the year 1834, in which he gave the land in question to his son George, and one hundred dollars to the plaintiffs, and that, a few days afterwards, George the son said, that he compelled or almost compelled his father to will him the land ; that he told his father that he had worked on the plantation, twelve or thirteen years after he had come of age, for which he would charge one hundred dollars a year, and would sue him for it, and break him np, if he did not will him the land. If this testimony had related to the execution of the deed, and were not weakened by other circumstances, it would have much weight with us ; but such is not the case — it relates to a will, made four years before the execution of the deed. The witness, who states it, is a subscribing witness to the deed as he was to the will, and, in his deposition, as taken by the plaintiffs, not a word is said about the deed, and we only learn that he was a witness to it from seeing his name subscribed to it, and from his examination, taken subsequently by the defendants. In his latter deposition he tells us, that the old man brought the deed to him, acknowledged it, and asked him to witness it, which he did ; and that he, at the same time, witnessed an obligation from the grantee to his father : he testified further, that the old man was entirely capable of making a will when he wrote the one for him in 1834. Archibald Tollar, another witness for the plaintiffs, testifies, that, some time before the year 1834, he wrote a will for the old man, in which he gave fifty dollars to each of the plaintiffs and the residue of his property to his son George, and that he, the witness, destroyed it, after he heard that the testator had made another. Under these circumstances
 
 *129
 
 we cannot give much effect to the declaration of the son, made to one witness, at a time not specified, and to another four years before the deed was executed, and in relation to a will of almost precisely the same import with the one previously made, and then in existence. The testimony of the subscribing and other witnesses, taken by the defendants, does not much vary the case, except in showing, that George Hay and his wife lived with bis father many years, working upon his farm, and supported him, principally by their labor, until his death, and that he had a dislike to George Suttles, the father of the plaintiffs, saying on one occasion, after the deed was executed, that he thought he had it fixed so that George Suttles could never get another shilling out of it. Upon a consideration of the whole case, we think that the plaintiffs have altogether failed to establish their allegation, that the deed in question was procured from the grantor by the fraudulent exercise of undue influence over him by the grantee and his wife. The inadequacy of price, relied upon by the counsel for the plaintiffs, can have no application to the case, because the plaintiffs do not claim as creditors or purchasers, and because the transaction between the parties to the deed was not a purchase, but was substantially, and so intended to be, a gift from a father to a son, for whom he was under a moral obligation to provide. The bill must be dismissed
 

 Per Curiam.
 

 Decree accordingly.