AMERICAN TRUST COMPANY, RECEIVER, v. UNITED CASH STORE COMPANY ET AL.

(Filed 26 January, 1927.)

1. **Evidence — Hearsay — Letters — Appeal and Error — Trials — Error Cured.**

    Letters written by those who were not witnesses upon the trial are erroneously admitted as hearsay, but may not be considered so if they are thereafter used in evidence or referred to without further objection from the appellant.

2. **Evidence—Issues—Fraud—Nonexpert Witnesses— Appeal and Error.**

    Where fraud in the procurement of a sale of stock is the issue in the action, it is reversible error, for which a new trial will be granted on appeal, for the defendant's witness to broadly testify that no fraud was practiced therein, it being a question for the sole determination of the jury, and not falling within the exception to the rule as to the admission of testimony of a nonexpert witness upon a collective fact.

CIVIL ACTION, before *Harding, J.,* at May Term, 1926, of MECK-LENBURG.

On 13 May, 1922, the defendant, United Cash Store Co., executed and delivered a promissory note in words and figures as follows:

"On 1 January, after date, we promise to pay to the order of Automatic Safety Car Step Company four thousand and 00/100 dollars with interest thereon at the rate of six per cent per annum, payable annually from maturity of this note until paid. Each surety bond endorser herein waives notice of dishonor and presentment, notwithstanding any extension of time granted by principal. Value received."

The payee in said note, to wit, Automatic Safety Car Step Co., sold the note on 6 June, 1922, prior to its maturity to the Security Savings Bank. The plaintiff, American Trust Company, was appointed receiver for the Security Savings Bank in August, 1924, and brought this suit on said note as such receiver against the United Cash Store Co., Automatic Safety Car Step Co., L. L. Caudle, John S. Blake and Fred D. Blake. The Security Savings Bank paid $4,000 for the note. The defendant, United Cash Store Co., and the defendant, R. C. Newsom, contended that the note was secured by means of fraud and false representation, for that the defendant, L. L. Caudle, was attempting to sell the defendant stock in the Automatic Safety Car Step Co., and that the defendant, United Cash Store Co., purchased stock in said company and paid one thousand dollars in cash on the purchase price and, executed said note for $4,000 for the balance of said purchase money. That at the time the said defendants purchased said stock the said salesman "falsely and fraudulently represented to the said R. C. Newsom that said Automatic Safety Car Step Company was a going concern and was solvent and did not owe anything, and had sufficient ready capital to carry on its business and to manufacture a certain safety automatic car step covered by patents which it owned; that the said corporation had a number of contracts calling for large quantities of car steps to be manufactured under said patents; that various railroad men and their organizations, and practically all of the important railroads in the United States, had decided to adopt the said car step. . . . That said corporation had acquired . . . a factory and equipment . . . which had been appraised at one-half million dollars. . . . That the total of the stock to be issued by said Automatic Safety Car Step Company, including that which had been issued, was restricted to $250,-000. . . . That the stock which they proposed to sell to this defendant was very valuable and would pay large dividends out of profits to be made from contracts then in existence as soon as its factory could begin operation, which would be not later than 1 July of that year."

The defendant further alleged and contended that other representations were made at the time of securing said note, and that all of said representations were false and made with fraudulent intent of cheating and defrauding the defendant, and further, that said stock salesman had sold said stock to the defendant "without complying with the statutes of North Carolina, commonly known as the Blue Sky Law of said State."

The issues and answers of the jury thereto were as follows:·

1. Was the execution of the note sued on procured by the false and fraudulent representations as alleged in the answer? Answer: No.

2. If so, did the plaintiff acquire said note in due course for value and before maturity without actual notice of said false and fraudulent representations? Answer: Yes.

3. At the time of the sale of stock, did the salesman of the Automatic Car Company deliver to the defendant a contract in accordance with section 6367 of Consolidated Statutes of North Carolina? Answer: No.

4. If not, did the plaintiff have notice of said fact? Answer: No.

5. At the time of the sale of said stock, was the Automatic Safety Car Step Company duly licensed to sell stock in North Carolina? Answer: No.

6. If not, did plaintiff at the time of acquiring said note have notice of said fact? Answer: No.

7. At the time of the sale of said stock was the agent making such sale duly licensed as a stock salesman under the laws of North Carolina? Answer: No.

8. If not, did the plaintiff at the time of acquiring said note have notice of such fact? Answer: No.

9. In what amount, if any, is defendant indebted to plaintiff on account of said note? Answer: $2,975.69.

*H. C. Jones* and *Whitlock, Dockery & Shaw* for *plaintiff.*
*Stewart, McRae & Bobbitt* and *James A. Lockhart* for *defendant.*

BROGDEN, J. The first assignment of error relates to the admission of a folder containing letters from railroad officials in regard to demonstrations of the car step and commendations thereof and estimates of value of the patent rights, together with letters from distinguished men, certifying to the good character of the officials of the Car Step Company. This testimony was incompetent as hearsay, but in several places in the record the contents of this folder were referred to by witnesses without objection, notably on pages 64, 75 and 87 of the printed record. So that, although the evidence was incompetent in the first instance, the subsequent references to it by both parties without objection cured the error in its admission. *Bryant v. Bryant,* 178 N. C., 77;

*Stanley v. Lumber Co.,* 184 N. C., 302; *Cook v. Mebane,* 191 N. C., p. 1; *Willis v. New Bern,* 191 N. C., 507.

The second assignment of error was to the following question and answer, elicited from the witness, Caudle, who sold the stock to the defendant and secured the note in controversy: Q. Was there any fraud in connection with it? A. There was not.

The general rule in regard to the expression of opinion by a witness is thus stated in *Marks v. Cotton Mills,* 135 N. C., 289: "A witness should state facts, the jury should find the facts, and the court should declare and explain the law. The functions of the three within their several spheres are clearly defined and should always be kept separate and distinct. Whether the speeder was so constructed as that its operation was safe to the defendant's employees, was the very question upon which the parties were at issue and which the jury were impaneled to decide. The witness' opinion upon that question was incompetent and the plaintiff's objection to it should have been sustained." This principle was fully discussed and applied in *Marshall v. Tel. Co.,* 181 N. C., 292.

In the *Marshall case, supra,* the Court points out and discusses the exception to the general rule and the principle of law is thus declared: "There is, however, a well-recognized exception to the rule, and 'It includes the evidence of common observers testifying the results of their observations made at the time in regard to common appearances, facts and conditions which cannot be reproduced and made palpable to a jury.' *Britt v. R. R.,* 148 N. C., 41." And further, that "the exception has as its foundation, necessity arising from the difficulty, and frequently the impossibility of so placing a number of complicated facts before a jury that the proper deduction may be drawn from them, when a single statement conveying the impression on the mind of the witness of all the facts, the combination considered together constituting a fact, could be easily understood, and the exception is subject to the limitation that the opinion or inference of the witness must not be on the exact issue to be determined by the jury."

Again, quoting from McKelvy on Evidence, the opinion declares: "The admissibility of such evidence does not extend the case where it would not prove helpful to the jury nor where its application would carry the witness into an expression of real opinion upon matters which it is the jury's province to decide." And further: "And the jury ought to have been permitted to draw the inferences from the evidence instead of the witness."

The principle declared in the *Marshall case* was reaffirmed in an opinion by *Stacy, J.,* in *Stanley v. Lumber Co.,* 184 N. C., 307, as follows: "The jury alone was summoned and selected to pass upon this

question, and the witness should not have been permitted to express an opinion upon the very matter at issue between the parties." *S. v. Brodie,* 190 N. C., 554; *In re Craig,* 192 N. C., 656.

Applying these established principles to the exception presented by this record, we are constrained to hold that the exception is well founded and that the opinion of the witness ought to have been excluded from consideration by the jury.

The facts were not complicated but relatively simple, and there was no question involving the observation of complicated conditions. So that this case does not fall within the exception pointed out in the cases referred to. Then, too, the very point at issue in the case was whether or not the contract was vitiated by fraud. This was the very question for which the jury was impaneled to pass upon.

We are, therefore, compelled to hold that this testimony was incompetent and that the admission thereof constituted reversible error.

New trial.