CORA LEE FARROW, ADMINISTRATRIX OF THE ESTATE OF ARTHUR R. FARROW, JR., DECEASED v. CHARLES BAUGHAM AND KATHRYN BAUGHAM.

(Filed 23 March, 1966.)

**1. Automobiles § 38—**

While it is competent for an investigating officer to testify as to the condition and position of the vehicles and other physical facts observed by him at the scene of the accident, his testimony as to his conclusions from these facts, such as that one of the vehicles had either stopped or was barely moving at the time of impact, is incompetent and is properly excluded.

**2. Automobiles § 41a—**

Negligence is not presumed from the mere fact that plaintiff's intestate was killed in a collision, and when the testimony and the physical facts at the scene leave in speculation the determinative facts as to the order the vehicles entered the intersection and as to their directions and turnings, nonsuit is properly entered, since the burden is on plaintiff to offer evidence permitting a legitimate inference of negligence from established facts.

MOORE, J., not sitting.

APPEAL by plaintiff from *Morris, J.,* September 1965 Civil Session of NEW HANOVER.

Action for wrongful death resulting from a three-car collision.

These facts are not disputed: Marstellar and Sixteenth Streets in Wilmington, each 32-36 feet wide, intersect at right angles. The intersection is uncontrolled, and the speed limit is 35 MPH. About 12:05 a.m. on January 1, 1965, defendant Charles Baugham, aged 17, was operating a 1964 green Oldsmobile, which his mother, defendant Kathryn Baugham, provided for the use of her family. Traveling on Sixteenth Street, he approached its intersection with Marstellar Street. Janice Starling was a passenger in the Baugham car. At the same time, Douglas Jackson, driving a white automobile west on Marstellar Street, was also approaching the intersection. Mrs. Wendy Tinga was with him. Plaintiff's intestate, Arthur R. Farrow, Jr., in a white Chevrolet, was likewise approaching this intersection. A collision occurred in the intersection; the three cars were severely damaged and Farrow was killed.

Plaintiff alleges that her intestate Farrow approached and entered the intersection "facing east"; that Baugham, traveling northwardly at an excessive rate of speed, without keeping a proper lookout, and without having his automobile under proper control, failed to yield the right of way to Farrow, who had entered the intersection first, and crashed into the side of Farrow's vehicle, fatally injuring him.

Police officer Marion L. Hodges, who had four years experience on the Wilmington Police Force, arrived on the scene shortly after midnight. Police officer Malcomb Bryan made a further investigation at 8:00 a.m. Hodges testified:

"I found the Jackson car somewhat north of the intersection in this position up against a wire fence on the northwest corner. . . . The other two vehicles were located in the intersection . . . in this manner, they were facing somewhat in a southwesterly direction, and the Jackson car approximately northwest. . . . I found marks somewhat on the southeast part of the intersection. The marks started here. One set went to the Farrow car, and the other went to the Baugham car. . . . I have put an 'X' on the diagram to illustrate the point at which the marks began, and that mark . . . is in the southeast quadrant of the intersection . . . southerly from the center line of Marstellar St. . . . I didn't find any marks leading up to the Jackson car."

The witness placed small model cars upon a blackboard drawing to illustrate his testimony. He found Farrow, who was dead or dying, lying on the pavement to the east of his car.

The Farrow car was badly damaged from the right front wheel forward; its floorboard had buckled forward inside the car. The Jackson car was damaged over the left front wheel but not as extensively as the Farrow car. The Baugham automobile had an indentation backward in about the center of the hood; the entire front was demolished. On the left side of the Jackson vehicle there was green paint from the front to the center of the left door; on the right side of the Farrow car, there was green paint from the front to the center of the right door.

Officer Bryan testified:

"There were two distinct marks in the intersection. . . . There were two scrape-outs of asphalt, half-moon shaped; one here and one here, and there were clear tire marks similar to the way it appears on the blackboard. . . . (The witness put a small zero on the board to indicate where the gouge marks were.) These half-moon spirals led in a southeast direction, as to each of the gouge marks, and extended back, I think, in this direction to the southwest corner. The skid marks end east of the center line on Sixteenth Street and north of the center line of Marstellar. . . . This star on the diagram stands for the impact area."

The day after the collision Baugham told Officer Hodges that he was going *north* on Sixteenth Street but that "he could not remember a thing about the accident; that it was as if the accident had never happened." Later, upon an adverse examination, Baugham testified that he was traveling *south* on Sixteenth Street. Jackson testified that he was traveling west on Marstellar Street. He recalled that he came to the Sixteenth Street intersection but said he remembered nothing further. Neither Mrs. Tinga nor Miss Starling testified.

Over the objection of defendants' counsel, Officer Hodges testified that from his investigation he "fixed the direction of the Baugham car as north on Sixteenth Street, and the Farrow car on E. Marstellar." Counsel for plaintiff then asked Hodges this question: "Based upon your investigation and the physical damage to the Farrow and Baugham automobiles, which you have testified to, and the marks in the intersection, did you determine whether or not the Farrow car was moving or sitting still at the time of the collision?" Defendants' objection was sustained. Had the witness been permitted to answer, he would have said: "I determined that the Farrow car was either stopped or barely moving at the time of the accident."

At the conclusion of plaintiff's evidence, defendants' motion for judgment of nonsuit was allowed, and plaintiff appealed.

*Addison Hewlett, Jr. and Marshall & Williams for plaintiff appellant.*

*James, James & Crossley for defendant appellees.*

PER CURIAM. Plaintiff assigns as error the exclusion of Officer Hodges' "determination" that the Farrow car was either stopped or barely moving at the time of the accident. This evidence was properly excluded.

> "A witness who investigates but does not see a wreck may describe to the jury the signs, marks, and conditions he found at the scene, including damage to the vehicle involved. From these, however, he cannot give an opinion as to its speed. The jury is just as well qualified as the witness to determine what inferences the facts will permit or require." *Shaw v. Sylvester,* 253 N.C. 176, 180, 116 S.E. 2d 351, 355.

Considering *all* the evidence which the trial judge admitted (as we are required to do in considering a motion for nonsuit, *Frazier v. Gas Co.,* 248 N.C. 559, 103 S.E. 2d 721), and, considering it in the light most favorable to the plaintiff, the evidence still leaves

"too many unknowns and imponderables" to permit the jury to consider it. Assuming, as plaintiff has alleged, that Farrow was going east and that Baugham was going north, the latter had the right of way unless Farrow was already in the intersection when Baugham approached. G.S. 20-155(a). Was Farrow already in the intersection when Baugham approached it? The evidence gives us no answer. Where in the intersection did the impact occur? The record discloses that, without objection, Officer Bryan put a star on the blackboard diagram to indicate "the impact area." In making his ruling, the trial judge had the benefit of this information; we do not. No copy or photograph of the blackboard drawing accompanied the case on appeal. See *Reynolds v. Hayes,* 256 N.C. 732, 125 S.E. 2d 18. Appellees' brief contains the statement that "the Farrow and Baugham cars ended up on the southwest corner." We have no way of knowing where they "ended up," for, without the map, we cannot locate either "here" or "there." The record does disclose that marks which led to the Farrow and Baugham cars began in the southeast quadrant and led off in a southwesterly direction. If we assume that the impact occurred in the southeast quadrant, it is difficult to see how the two cars, going east and north respectively, came to rest in the southwest quadrant. Could the Farrow car, having approached from the west, been attempting to make a left turn in the intersection to go north on Sixteenth Street? Or, having approached from the north, was it attempting to make a left turn in order to go east on Marstellar? And what was the role of the Jackson car in the collision? No marks led to it. Plaintiff's theory is that the Farrow vehicle, traveling east, was struck by Baugham, going north, and that Jackson, traveling west on Marstellar, then collided with Baugham and perhaps Farrow. We may speculate at length on the manner in which this collision occurred, but evidence is lacking. Negligence is not presumed from the fact that plaintiff's intestate was killed in the collision. Plaintiff must offer evidence "sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts." *Williamson v. Randall,* 248 N.C. 20, 25, 102 S.E. 2d 381, 386.

The judgment of involuntary nonsuit entered below is
Affirmed.

MOORE, J., not sitting.